UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD A. LEINES,<br><br>Plaintiff,<br><br>v.<br><br>HOMELAND VINYL PRODUCTS, INC.,<br><br>Defendant. | No. 2:18-cv-00969-KJM-DB<br><br><br><br>ORDER |

Plaintiff Richard Leines sues defendant Homeland Vinyl, Inc. ("Homeland"), alleging, among other things, Homeland's "Gorilla Lock" product infringes a patent owned and developed by Leines. On September 30, 2019, the court conducted a claim construction hearing in accordance with *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996). Through this order, based on the hearing and on the record before it, the court construes the disputed words and phrases found in Claim 11 of Leines' patent at issue, U.S. Patent No. 594,961 ("the '961 Patent").

I.  BACKGROUND

Leines and Homeland entered into a licensing agreement whereby Homeland could manufacture and sell certain products, called "Gorilla Lock" deck products, that are purportedly based on an invention Leines patented. Compl. ¶ 5. The patent at issue in the license and in the complaint, Patent No. 6,594,961, is entitled "Deck Plank Extrusion and Retaining Clip," *id.* ¶ 6,

and describes a type of "decking board" designed to "allow simple installation and removal," when constructing a deck or similar surface, Pl.'s Br., ECF No. 35, at 5.

Claim 11 of the '961 Patent ("Claim 11"), at issue in the dispute presently before the court, states:

> 11. A deck board which can be attached to an underlying surface easily in one downward motion and with a **simple clip**, comprising:
> a deck board of **rigid material** having a width and a length, the width being substantially less than the length, said deck board having a pair of opposite edges, said opposite edges having a separation that defines said width,
> said deck board having an upper surface and an under side,
> said under side of said deck board having a bottom surface which is substantially parallel to said upper surface and an elongated recess in a portion of said bottom surface, said elongated recess extending along the length of said deck board,
> said elongated recess having **a pair of sidewalls which directly face each other** and which are **spaced apart by a predetermined spacing**,
> a bottom portion of each of said pair of sidewalls of said elongated recess tapering up and inward toward the opposite sidewall to a ledge which faces upward, so that said sidewalls contain a respective pair of upwardly facing ledges, **each ledge extending from and being spaced up from the bottom of a respective sidewall by a predetermined distance**,
> said ledges extending into said recess from said respective sidewalls toward each other,
> whereby said deck board can be connected smoothly and securely to a clip having a pair of outwardly facing flanges while maintaining a uniform alignment of said elongated deck board over said surface, yet can be readily disconnected, and such that said deck board can be trimmed in width at said edges of said deck board without disturbing the attachment of said deck board to said clip.

Compl., Ex B ('961 Patent), ECF No. 1-2, at 15 (emphasis added to highlight disputed terms).

In accordance with Rule 4 of the Northern District's Patent Local Rules,[1] Leines has submitted an opening brief on claim construction. *See* Pl.'s Br. Defendants submitted a responsive claim construction brief, Defs.' Resp., ECF No. 36, and Leines replied, Reply, ECF No. 37. After hearing oral argument on the matter, the court addresses the construction of the disputed words and phrases found in Claim 11 of the '961 Patent below.

---

[1] The court has adopted the Northern District's Patent Local Rules to govern the relevant parts of this case. *See* ECF No. 24 at 2.

## II. LEGAL STANDARD

The court construes patent claims as a matter of law reserved for the court to decide, *Markman*, 517 U.S. at 372, based on the relevant intrinsic and extrinsic evidence, *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313–14 (Fed. Cir. 2005) (en banc). "Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim." *Phillips*, 415 F.3d at 1316 (internal quotation marks and citation omitted). Accordingly, a claim should be construed in a manner that "stays true to the claim language and most naturally aligns with the patent's description of the invention." *Id.*

In construing disputed terms, a court looks first to the claims themselves, for "[i]t is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Id.* at 1312 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). Generally, the words of a claim should be given their "ordinary and customary meaning," which is "the meaning that the term[s] would have to a person of ordinary skill in the art in question at the time of the invention." *Id.* at 1312–13. A "person of ordinary skill is a hypothetical person who is presumed to be aware of all the pertinent prior art." *Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.*, 807 F.2d 955, 962 (Fed. Cir. 1986) (footnote omitted). In some instances, the ordinary meaning to a person of skill in the art is clear and claim construction may involve "little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314.

Furthermore, "[w]here commonly understood words are accorded their ordinary meaning in the patent, the court need not construe them for the jury." *Medversant Techs., L.L.C. v. Morrisey Assocs., Inc.*, No. CV 09-05031 MMM FFMX, 2011 WL 9527718, at \*19 (C.D. Cal. Aug. 5, 2011) (citing, *inter alia*, *Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*, 249 F.3d 1341, 1349 (Fed. Cir. 2001) (holding district court did not err when it declined to construe "melting" because term was used in patent in its ordinary meaning and did not otherwise require construction)).

3

In many cases, however, the meaning of a term to a person skilled in the art will not be readily apparent, and a court must look to other sources to interpret the term's meaning. *See id.* at 4. Under these circumstances, a court should consider the context in which the term is used in an asserted claim or in related claims and bear in mind that "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification," *Phillips*, 415 F.3d at 1313, as well as the prosecution history, which consists of the complete record of proceedings before the U.S. Patent and Trademark Office ("PTO") and includes the cited prior art references. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996); *Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*, No. 216CV00148KJMEFB, 2019 WL 3253782, at *3 (E.D. Cal. July 19, 2019). A court is also authorized to consider extrinsic evidence in construing claims, such as "expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980 Although a court may consider evidence extrinsic to the patent and prosecution history, such evidence is considered "less significant than the intrinsic record" and "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.* at 1317–18 (internal quotation marks and citations omitted).

III. DISCUSSION

    A. Constructions on Which Parties Agree

As provided by Patent Local Rule 4.3(c), the parties have identified the following terms and constructions upon which they agree:

| Claim Term | Construction |
|---|---|
| "a bottom portion of each of said pair of sidewalls" | Plain and ordinary meaning. |
| "tapering up and inward toward the opposite sidewall to a ledge which faces upward" | Plain and ordinary meaning. |

Joint Claim Construction Statement, ECF No. 32, at 1. The court accepts these constructions and construes the above claim terms as described.

B. Claim 11's Preamble & "Simple Clip"

Defendant originally contended the preamble of Claim 11 is limiting, and therefore the term "simple clip," which appears in the preamble, requires construction. Def.'s Resp. at 11. At hearing, defendant conceded the preamble is not limiting as to the term "simple clip," and no construction is necessary. The court thus does not construe the term "simple clip." Defendant's concession did not extend to the remainder of the preamble, however, which defendant addresses in its briefing regarding indefiniteness. Def.'s Resp. at 19–20; *see also TomTom, Inc. v. Adolph*, 790 F.3d 1315, 1323–24 (Fed. Cir. 2015) (holding district court "erred in determining that it had to construe the entire preamble if it construed a portion of it" and finding certain language in preamble was not limiting, as not providing an antecedent basis for any claims but rather stating a "purpose or intended use").

C. Other Disputed Terms

1. "Rigid material"

Plaintiff asserts the term "rigid material" does not require construction and should simply be given its "plain and ordinary meaning," which it describes as "material that is rigid." Pl.'s Br. at 8–9; Pl.'s Reply at 10 (insisting the phrase needs no construction. Defendant argues the term needs to be construed, but agrees that "a material that is rigid" is an appropriate construction. Def.'s Resp. at 13. At hearing, the parties agreed that "rigid material" and "a material that is rigid" mean essentially the same thing, with words "simply rearrange[d]," Pl.'s Reply at 10, but defendant maintained its proposed construction was slightly clearer than the term in the patent. On review of the patent specification, the court discerns no special meaning to the term "rigid material," but finds the construction "a material that is rigid" is a proper construction of the term, as it is slightly clearer than "rigid material." *See Delta Faucet Co. v. Kohler Co.*, No. 117CV01222SEBDML, 2018 WL 2865467, at *5 (S.D. Ind. June 11, 2018) (finding no construction of term "releasably" necessary, but adopting one party's "gloss" on the term, as it is "somewhat clearer and thus more readily understood by a jury without change in

meaning than is the term itself"); *Sun Microsystems, Inc. v. Network Appliance, Inc.*, 591 F. Supp. 2d 1069, 1096 (N.D. Cal. 2008) (finding no substantive difference between two proposed constructions of a term, court determined that one construction "is slightly clearer, and therefore more helpful for the jury").

        2. <u>"A pair of sidewalls which directly face each other"</u>

| Claim Term | Leines' Proposed Construction | Homeland's Compromise Construction |
|---|---|---|
| "A pair of sidewalls which directly face each other" | No construction necessary; plain and ordinary meaning. | "Any pair of sidewalls which directly face each other and define the boundary of an elongated recess in a deck board" |

Leines maintains the disputed term, "a pair of sidewalls which directly face each other" needs no construction, because it is "simple and clear." Pl.'s Br. at 12–14. Homeland disagrees, and argues the phrase is unclear and should be construed as "any pair of sidewalls which directly face each other and define the boundary of an elongated recess in a deck board." Def.'s Resp. at 14–15.

Inherent in the parties' dispute over the meaning of the phrase "a pair of sidewalls which directly face each other" is a dispute over the term "sidewall." Homeland initially proposed the construction "any panel or partition," but, in its responsive brief, agrees to incorporate the term "sidewall" as is, insofar as it means "a wall forming the side of something." Def.'s Resp. at 14 & n.3 (citing https://www.merriam-webster.com/dictionary/sidewall). The court finds "a wall forming the side of something" is an appropriate construction, as it encompasses the term's plain and ordinary meaning and appears to comport with the term's meaning as it is used in the patent. To clarify, the court is not relying on the dictionary definition of "sidewall" provided by Homeland to identify a new meaning of the term, but simply adopts it as articulating the ordinary meaning of the term. *See CANVS Corp. v. United States*, 126 Fed. Cl. 106, 116 (2016) ("[T]he ordinary meaning of words as gleaned from the intrinsic record should not be set aside for

a dictionary definition that plainly contradicts the use of the words in the patent.") (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1322 (Fed. Cir. 2005) ("[Judges] may [] rely on dictionary definitions when construing claim terms, so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents.")). As for the phrase as a whole, Homeland argues it requires construction because "it is unclear how exactly the sidewalls relate to each other, what spacing exists, and when that spacing is determined." Def.'s Resp. at 6. In an effort to clarify, Homeland's proposed construction appends ". . . and define the boundary of an elongated recess in a deck board" to the phrase "any pair of sidewalls which directly face each other." *Id.* at 14. But Homeland does not provide the court with anything in the claim, the specification, or the prosecution history that suggests the phrase has any special meaning beyond its ordinary, everyday meaning.

Leines opposes Homeland's proposed construction, arguing that it "is not specific as to which recess is being defined," and is inaccurate because the "claimed elongated recess is defined not only by the sidewalls but by the horizontal support member." Pl.'s Br. at 14. Further, Leines argues that the construction cannot comprise "any two" panels, partitions, or sidewalls, because the claim refers only to two sidewalls that "face each other," thereby rendering them "a pair of sidewalls." *Id.* "Any two" panels, partitions, or sidewalls "improperly broaden[s] the term." *Id.* Leines does not appear to argue that Homeland's proposed phrase "and define the boundary of an elongated recess in a deck board" is inaccurate, but argues only that it is unnecessary, because the meaning of the term is clear without it. Pl.'s Br. at 14.

Leines further argues the "plain meaning of these terms is confirmed when viewed in light of the specification." In particular, Leines points to Figure 2 which depicts the "sidewalls" spaced apart and directly facing each other, reproduced below first in its original form, and then with added embellishments from plaintiff's brief emphasizing the disputed claim terms. '961 Patent, at 4 Fig. 2; Pl.'s Br. at 13. "In conjunction with the horizontal stabilizing web 40 (which

7

has no facing wall)," Leines explains, Figure 2 shows the sidewalls "define the elongated recess's predetermined spacing." Pl.'s Br. at 13.

 

'961 Patent, at 4 Fig. 2 (left image); Pl.'s Br. at 13 (right image).

Leines also argues that the prosecution history of the '691 Patent is "consistent with both the claim language and specification and evidences no intent on the part of the patentee to impart a special meaning to these terms." Pl.'s Br. at 13–14 (citing Benisek Decl, Ex. B, 5.28.2002 Am. A at RL000108-11 ("The deck-plank holding portion comprises of flanges that are spaced up from the base and that extend away from each other in opposite directions. The plank has a bottom elongated recess with a pair of upwardly facing ledges that mate with the flanges of the clip when the plank is pushed down over the clip.")).

Given the claim language and the specification, the court finds the meaning of the phrase "a pair of sidewalls which directly face each other" need not be construed, because it would be understood by a person of ordinary skill in the art in its "ordinary, everyday sense" especially with the additional clarification provided by Figure 2 in the patent, '961 Patent at 4 fig. 2. *Collegenet, Inc. v. XAP Corp.*, No. CV-03-1229-HU, 2004 WL 2429843, at *14 (D. Or. Oct. 29, 2004) (construction not necessary where a claim term appears to be used in its ordinary sense, not in any technical or scientific sense). As one district court has explained: "While claim terms 'must be construed as they would be understood by a person of ordinary skill in the art to which the invention pertains,' and thus, '[w]hat the claim terms would mean to laymen is irrelevant[,]' if a person of ordinary skill in the art would understand the term in its ordinary, everyday sense, there is no need to construe the term." *Id.* (quoting *Searfoss v. Pioneer Consol. Corp.*, 374 F.3d 1142, 1149 (Fed. Cir. 2004)). The phrase "a pair of sidewalls which directly face each other" can be

8

understood in its ordinary, everyday sense. Homeland's proposed construction adds unnecessary embellishments that do not add clarity and run counter to the ordinary meaning of the term. Therefore, the phrase needs no construction.

        3.      <u>"Spaced apart by a predetermined spacing" & "Being spaced up from the bottom of a respective sidewall by a predetermined distance"</u>

| Claim Term | Leines' Proposed Construction | Homeland's Compromise Construction |
| --- | --- | --- |
| "Each ledge . . . being spaced up from the bottom of a respective sidewall by a predetermined distance" | No construction necessary; plain and ordinary meaning. | "Any spacing between the ledge and the bottom of the sidewall determined before manufacturing." |
| "spaced apart by a predetermined spacing." | No construction necessary; plain and ordinary meaning. | "Any spacing that exists between the sidewalls that is determined before manufacturing." |

        The parties also dispute whether the claim terms "Each ledge . . . being spaced up from the bottom of a respective sidewall by a predetermined distance" and "spaced apart by a predetermined spacing" require construction. As signaled by Homeland's compromise construction and related briefing, the crux of the dispute is over the word "predetermined" as used in both of the aforementioned claim terms. Homeland argues the word should be construed to mean "determined before manufacturing," whereas Leines maintains the word requires no construction, as the meaning is obvious. *See* Pl.'s Reply at 11. Leines also argues the addition of the word "manufacturing" is inaccurate, because "not all deck boards within the scope of the claim are 'manufactured.'" *Id.* For example, the claimed deck board may be made of wood, and "manually routed by the carpenter to meet the limitations of the claim *just prior to installation* as decking."[2] *Id.* (emphasis added).

---

[2] As used here, "routed" means to have gouged a furrow into a wooden surface, which is distinct from "manufacture," which can mean "to make from raw materials by hand or by

9

Here, the court agrees with Homeland that, in this context, the term "predetermined" implies that the spacing is determined before some event. At hearing, the court suggested an alternative construction, which the parties discussed and generally agreed upon: "Any spacing between the ledge and the bottom of the sidewall determined before installation," rather than before manufacturing. Leines pointed out, however, that the spacing of the sidewalls may be modified after initial installation of the product. Taking this observation into account, the court finds the terms are appropriately construed, respectively, as: "Any spacing between the ledge and the bottom of the sidewall determined before installation or re-installation," and "Any spacing that exists between the sidewalls that is determined before installation or re-installation."

### D. Homeland's Indefiniteness Arguments

#### 1. Addressing Indefiniteness at the Claim Construction Hearing

In its responsive claim construction brief, Homeland argues that at least six terms in the '961 Patent are indefinite under 35 U.S.C. § 112. Def.'s Resp. at 17. Homeland explains that it identified these terms in its preliminary claim constructions that the parties exchanged as provided by Patent Local Rule 4-2. *See* Def.'s Resp. at 18 n.6. However, there is no discussion of these terms in the parties' joint claim construction and prehearing statement, which is governed by Patent Rule 4-3. ECF No. 32. In his brief, Leines argues Homeland's arguments regarding indefiniteness are "procedurally improper," Pl.'s Reply at 3, but at hearing, he argued the court should decide the issue of indefiniteness at the current claim construction stage.

Because Homeland has the burden of demonstrating indefiniteness and invalidity contentions are potentially dispositive, Homeland's indefiniteness arguments are more appropriately advanced in a summary judgment motion, rather than in a responsive claim construction brief. *See 2-Way Computing, Inc. v. Nextel Fin. Co.*, No. 2:11-CV-00012-JCM, 2012 WL 4846145, at *20 (D. Nev. Oct. 9, 2012) (magistrate judge's decision noting "it is more appropriate to defer these arguments until summary judgment because they are potentially

---

machinery." *See Rout*, Merriam-Webster, https://www.merriam-webster.com/dictionary/rout (last visited Jan. 22, 2020); *Manufacture*, Merriam-Webster, https://www.merriam-webster.com/dictionary/manufacture (last visited Jan. 22, 2020).

10

dispositive and would invalidate the patent, and because of the burden of proof required to show indefiniteness."), *amended on reconsideration on other grounds, sub nom. 2-Way Computing, Inc. v. Sprint Nextel Corp.*, No. 2:11-CV-12 JCM PAL, 2013 WL 2218010 (D. Nev. May 17, 2013) (district judge's decision on reconsideration). Homeland appears to anticipate this argument, stating, in a footnote, "To the extent the Court desires further briefing on the indefiniteness issue, Homeland will file a supplemental brief or separate motion for summary judgment." Def.'s Resp. at 18 n.6.

Though "[i]ndefiniteness is a question of law," *Amgen Inc. v. F. Hoffman–LA Roche Ltd.*, 580 F.3d 1340, 1371 (Fed. Cir. 2009) (citation omitted), Homeland's indefiniteness arguments under 35 U.S.C. § 112 are not properly raised in its responsive claim construction brief, given the procedural framework provided by the Patent Local Rules in force here. The local rule governing claim construction proceedings, Patent Local Rule 4, does not expressly reference indefiniteness.[3] The rule's provision governing claim construction briefs states that the "party claiming patent infringement" or "the party asserting invalidity if there is no infringement issue present in the case" shall file "an opening brief and any evidence supporting its claim construction." Patent L.R. 4-5(a). No later than 14 days afterwards, the opposing party is to file "its responsive brief and supporting evidence." Patent L.R. 4-5(b). Homeland did not file an opening brief, nor does it contend it was entitled to do so, since there is clearly an "infringement issue present in [this] case." *See* Compl. at 20 (alleging patent infringement). Rather, the applicable local rules reserve the claim construction hearing and related briefing for arguments related solely to claim construction, as the title belies. Patent L.R. 4 ("Claim Construction Proceedings"). For this reason, and because

---

[3] None of the remaining provisions mention indefiniteness either. Rule 4-2, governing the exchange of preliminary claim constructions and extrinsic evidence, directs the parties to include in the "Preliminary Claim Construction": "for each term which any party contends is governed by 35 U.S.C. § 112(6), identify the structure(s), act(s), or material(s) corresponding to that term's function," in addition to their proposed constructions on each term identified "for claim construction." Patent L.R. 4-2(a). However, 36 U.S.C. § 112 does not have a subdivision six, only a subdivision "(f)," which is titled "Element in Claim for a Combination" and is not the subdivision related to indefiniteness. The requirement of definiteness is rooted in subdivision "(b)," previously paragraph two of section 112. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 902 (2014) ("The 1870 Act's definiteness requirement survives today, largely unaltered.") (citing 35 U.S.C. § 112, ¶ 2 (2006 ed.)).

11

defendant has the burden of proof on the issue, the court finds the question whether certain terms in the '961 Patent are indefinite is more suitable for resolution on summary judgment and does not reach the question here. *See Takeda Pharm. Co. v. Handa Pharm.*, LLC, No. C-11-00840 JCS, 2012 WL 1243109, at *16 (N.D. Cal. Apr. 11, 2012) ("Due to the largely factual nature of [the inquiry whether a term is indefinite], the Court concludes that this question is more suitable for determination on summary judgment than at the claim construction phase of the case.") (citing *CSB–System Int'l, Inc. v. SAP America, Inc.*, 2011 WL 3240838, at *17–18 (E.D. Pa., July 28, 2011) (discussing reasons for deferring indefiniteness inquiry to summary judgment[4])); *see also Chiron Corp. v. Genentech, Inc.*, No. CIV.S-00-1252 WBSGGH, 2002 WL 32123928, at *2 (E.D. Cal. June 24, 2002) (where party brought summary judgment motion on issue of indefiniteness, court explained "it is not uncommon for courts to find a claim term invalid for indefiniteness after construing the term" and therefore motion was procedurally sound); *but see Eclectic Prod., Inc. v. Painters Prod., Inc.*, No. 6:13-CV-02181-AA, 2015 WL 930045, at *2 (D. Or. Mar. 2, 2015) (deciding issue of indefiniteness when raised affirmatively in plaintiff's opening claim construction brief); *Noah Systems, Inc. v. Intuit Inc.*, 675 F.3d 1302, 1311 (Fed. Cir. 2012) ("Whether a claim complies with the definiteness requirement of 35 U.S.C. § 112 ¶ 2 is a matter of claim construction, which we review de novo." (footnote omitted)). Homeland may raise its indefiniteness arguments in a motion for summary judgment.

### 2. Waiver of Indefiniteness Expert

For the first time at hearing, Leines raised the argument that Homeland waived its ability to offer an expert on indefiniteness, because Homeland did not name an expert on indefiniteness before expert discovery on claim construction closed. The court ordered the parties

---

[4] "Several well-settled principles [] tend to discourage rulings on indefiniteness at the *Markman* stage. First, there is a high burden of proof on a party challenging the patent based on indefiniteness, which is difficult to meet at the early stages of litigation. Proof of indefiniteness must meet an exacting standard. *Haemonetics Corp. v. Baxter Healthcare Corp.*, 607 F.3d 776, 783 (Fed. Cir. 2010). A patentee need not define his invention with mathematical precision in order to comply with the definiteness requirement. *Hearing Components, Inc. v. Shure Inc.*, 600 F.3d 1357, 1367 (Fed. Cir. 2010). Moreover, a claim is not indefinite simply because the parties disagree concerning construction. *Id.*" *CSB–System Int'l, Inc.*, 2011 WL 3240838 at *17.

to submit supplemental briefing on this issue, ECF No. 44, which they have now done, Pl.'s Suppl. Br., ECF No. 45; Def.'s Suppl. Br., ECF No. 46.

Following the procedure set forth in Patent Local Rule 4-2, the parties exchanged preliminary claim constructions. *See* Patent L.R. 4-2(a). Therein, Homeland identified six terms in Claim 11 that it argued rendered the claim indefinite under 35 U.S.C. § 112, but Homeland did not identify an expert on the subject. Def.'s Resp., Ex. A (Def.'s Proposed Claim Constructions), ECF 36-1. Patent Local Rule 4-2 directs the parties as the next step to submit a joint claim construction statement that includes "testimony of percipient and expert witnesses." Patent L.R. 4-2(b). However, in the parties' joint claim construction statement, filed on the docket, Homeland did not raise the issue of indefiniteness. *See* ECF 32. Only in its responsive claim construction brief, as noted above, did Homeland raise its indefiniteness arguments. Def.'s Resp. at 17.

Essentially, the parties' dispute comes down to whether indefiniteness is properly addressed within the parameters of this claim construction phase of the case, for which discovery closed on April 15, 2019, or whether indefiniteness should be decided in a dispositive motion, in which case the deadline to identify an expert is December 6, 2019. Scheduling Order, ECF No. 24, at 2 (April 15, 2019 is "Close of Claim Construction Discovery"; Am. Scheduling Order at 1 (setting December 6, 2019 as date "Opening Expert Reports due (on issues for which the party bears the burden of proof," but not amending "Close of Claim Construction Discovery" date). Specifically, Homeland argues indefiniteness is an invalidity contention and is therefore subject to Patent Local Rule 3 covering "Patent Disclosures," rather than Local Patent Rule 4, which governs "Claim Construction Proceedings." Def.'s Suppl. Br. at 3–4 & n.3 (citing Local Patent Rule 3-3(d) (requiring disclosure of "[a]ny grounds of invalidity based on . . . indefiniteness")). For procedural purposes, the court agrees. As discussed above, the patent local rule governing claim construction does not address claims of indefiniteness. By contrast, Rule 3 refers directly to indefiniteness arguments, directing the party opposing patent infringement to serve on all parties its "Invalidity Contentions," containing, *inter alia*, "[a]ny grounds of invalidity based on 35 U.S.C. § 101, indefiniteness under 35 U.S.C. § 112(2) or enablement or written description under

13

35 U.S.C. § 112(1) of any of the asserted claims." Patent L.R. 3-3(d). That the drafters of the Patent Local Rules chose to call out indefiniteness arguments specifically in Rule 3-3, but not in Rule 4, suggests the omission was deliberate, and signals indefiniteness is procedurally not a part of the claim construction phase.

Furthermore, courts often address indefiniteness at the summary judgment stage, and this court never signaled otherwise, so it was reasonable for Homeland to expect the court would do the same here and to interpret the scheduling order accordingly. *See, e.g.*, *Takeda Pharm. Co.*, 2012 WL 1243109, at \*16. Finally, indefiniteness is a dispositive issue on which Homeland "bears the burden of proof." *See* Scheduling Order at 2; *see also* Pl.'s Reply at 3. Therefore, by the plain language of the scheduling order, Homeland's indefiniteness expert disclosure was not due until December 6, 2019. Am. Scheduling Order at 1.

IV. <u>CONCLUSION</u>

For the reasons above, the court construes the terms in Claim 11 of the '961 Patent as follows:

| **Claim Term** | **Construction** |
|---|---|
| "Simple clip" | The term does not require construction, because the preamble is not limiting with respect to "simple clip." |
| "Rigid material" | "A material that is rigid" |
| "A pair of sidewalls which directly face each other" | "Sidewall" is construed to mean its plain and ordinary meaning, "a wall that forms the side of something." Otherwise, the term does not require construction. |
| "Each ledge . . . being spaced up from the bottom of a respective sidewall by a predetermined distance . . ." | "Any spacing that exists between the sidewalls that is determined before installation or re-installation." |
| "Spaced apart by a predetermined spacing." | "Any spacing that exists between the sidewalls that is determined before installation or re-installation." |

14

The court does not rule at this time on the issue of indefiniteness, which it will decide if and when the issue is properly raised in a motion for summary judgment. Homeland has not waived its ability to offer an expert on indefiniteness, so long as it disclosed such an expert before the December 6, 2019 deadline, which has now passed. If Homeland requires an extension of this deadline in light of this order, it may seek one through a stipulation offered by the parties or in an ex parte request.

This order resolves ECF No. 35.

IT IS SO ORDERED.

DATED: January 23, 2020.

_____
CHIEF UNITED STATES DISTRICT JUDGE